69 F.3d 538
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Charles FORTE, Defendant-Appellant.
 No. 94-6514.
 United States Court of Appeals, Sixth Circuit.
 Oct. 31, 1995.
 
 Before: SILER and DAUGHTREY, Circuit Judges; ROSEN, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant, Charles Forte, appeals his sentence following a guilty plea to conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846. Forte contends that the district court erred in its determination of the quantity of drugs attributable to him for sentencing purposes and in its denial of a reduction for acceptance of responsibility. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 In 1994, Forte was indicted, along with two other individuals, Amos Thomas and Maurice Wallace, for conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 U.S.C. Sec. 846 (Count 1) and possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. Sec. 841 (Count 2).
 
 
 3
 Pursuant to a plea agreement, he pled guilty to Count 1 and Count 2 was dismissed. The district court determined Forte's offense level to be 32 with a Criminal History Category of III, resulting in a guideline range of 151-188 months. It granted the government's motion under Sec. 5K1.1 for a downward departure and sentenced Forte to 145 months imprisonment with a five-year period of supervised release.
 
 
 4
 Before Forte was arrested federal agents learned that on March 24, 1994, Forte would be meeting Thomas, who was coming to Chattanooga with eight kilograms of cocaine. The agents went to the Shoney's Inn at the designated time and noted that a blue van matching the description they had been given was there. Forte arrived, exited his vehicle and engaged in a conversation with Thomas. Then, both men got into the blue van.
 
 
 5
 As Forte was leaving the van, agents observed him stuff something in his pants. When he attempted to leave the parking lot, he was challenged by a Chattanooga police officer. Forte attempted to drive off, but an officer fired three shots, causing Forte to crash his car into a tree. Forte fled the vehicle on foot but was apprehended. Officers recovered a one-kilogram package of cocaine and some cash in the area where Forte had been arrested.
 
 
 6
 Thomas admitted that he had come to Chattanooga with eight kilograms of cocaine. In addition to the one kilogram recovered near Forte, officers found six more kilograms of cocaine in the van. Thomas told the police that the eighth kilogram had been sold to Maurice Wallace earlier that day.
 
 
 7
 When Wallace was later arrested, he admitted that he had purchased the kilogram from Thomas. He advised that he had already opened the bag and removed some of the cocaine. The police recovered the opened bag of cocaine which still contained most of the cocaine and a set of scales. An examination of all of the recovered bags of cocaine revealed that the six kilograms found in the van were wrapped exactly like the one kilogram which Forte had attempted to throw away. The seven unopened packages were almost identical in weight.
 
 II.
 
 8
 The district court found Forte responsible for the six kilograms recovered from Thomas' van as well as the one kilogram found near his person. Forte contends this finding was based on "unreliable and perjured testimony and contrary to the facts of the case." He argues that he should only be held responsible for the one kilogram found near his person.
 
 
 9
 "It is 'the sentencing judge ... [who] has the prerogative to make a determination of the quantity of drugs involved in a scheme and to sentence accordingly.' " United States v. Thomas, 49 F.3d 253, 259 (6th Cir.1995) (quoting United States v. Moreno, 899 F.2d 465, 473 (6th Cir.1990)). We review this finding for clear error. United States v. Mahaffey, 53 F.3d 128, 131 (6th Cir.1995).
 
 
 10
 "The government has the burden of proving by a preponderance of the evidence the amount of drugs for which a defendant is accountable.... [T]he defendant [should be held] responsible for that quantity of drugs for which '[he] is more likely than not actually responsible.' ... A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by 'competent evidence in the record.' " Id. at 131-32 (citations omitted). "The defendant who challenges the sentencing court's drug quantity determination naturally faces 'a difficult burden' on appeal.... We reverse only if the entire record leaves us with 'the definite and firm conviction that a mistake has been committed.' " United States v. Simmons, 964 F.2d 763, 773 (8th Cir.), cert. denied, 113 S.Ct. 632 (1992) (citations omitted).
 
 
 11
 At the sentencing hearing, evidence was presented that Thomas had delivered approximately 29 kilograms of cocaine from Atlanta to Forte since August 1993. These deliveries were always prepaid with the normal procedure of Forte's taking one kilogram to "test" it and returning later for the remainder. Kim Pinkerton testified that she and Forte had planned to return later and steal the remaining cocaine from Thomas.
 
 
 12
 The district court found that portions of both Thomas' and Pinkerton's testimony were not entirely credible. However, their testimony regarding the amount of cocaine was amply corroborated. The information provided by the informant was that Thomas would have eight kilograms of cocaine. The total amount recovered was 7.75 kilograms and Wallace admitted that he had taken a portion from one of the bags. Further, Agent Malone testified that, upon his arrest, Forte admitted that he intended to steal the remaining cocaine from Thomas. Information supplied by an identified informant and corroborated in important respects is sufficiently reliable to support a sentencing determination. United States v. Herrera, 928 F.2d 769, 773-74 (6th Cir.1991). The amount of cocaine Forte intended to possess, even if it never was possessed by him, can be used to determine his base offense level. United States v. Nichols, 979 F.2d 402, 413-14 (6th Cir.1992), aff'd, 114 S.Ct. 1921 (1994). The district court's attribution of only seven kilograms of cocaine to Forte was indeed very conservative as the attribution of the entire 29 kilograms would have also been supported by the preponderance of the evidence. Thus, the district court's determination was not clearly erroneous.
 
 III.
 
 13
 Finally, Forte contends that the district court improperly denied a reduction for acceptance of responsibility. Section 3E1.1(a) of the United States Sentencing Guidelines permits a two-level acceptance of responsibility reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct."
 
 
 14
 The defendant bears the burden of proof to obtain a reduction for acceptance of responsibility. United States v. Meachem, 27 F.3d 214, 218 (6th Cir.1994). The district court's determination is reviewed for clear error. United States v. Lucas, 889 F.2d 697, 700 (6th Cir.1990). "Whether or not a defendant has accepted responsibility is a factual question, depending largely upon credibility assessments. With respect to such assessments, we defer to the conclusion of the sentencing judge ... [and] affirm the sentencing judge's findings unless they are 'without foundation.' " Lucas, 889 F.2d at 700 (citations omitted).
 
 
 15
 Forte denied responsibility for the six kilograms of cocaine recovered from Thomas' van. He also denied any involvement in cocaine trafficking prior to March 24, 1994. However, this was contradicted by the evidence found in his apartment; Kim Pinkerton's testimony that she knew he was in the cocaine business; Thomas' testimony that he had been transporting drugs from Atlanta to Forte since August 1993; and Wallace's testimony that prior to their falling out, he and Forte were in the drug trafficking business together. Thus, the court's determination that Forte was "in fact ... a drug dealer and was dealing in drugs for some period of time prior to his arrest," was amply supported by the record.
 
 
 16
 Further, Forte denied that he had made any admissions to Agent Malone. Forte even denied that he had attempted to flee from officers at his arrest. However, Agent Malone's testimony regarding Forte's admission and his attempt to flee was corroborated by the other evidence.
 
 
 17
 The district court's denial of a reduction for acceptance of responsibility was not "without foundation" and was not clearly erroneous.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation